FANNIE L. WORDIN ET AL.    APPEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1894.    ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A testator devised his homestead to his executors in trust for the use of his daughters jointly, during their lives and the life of the survivor, and directed the executors to pay, during said term, the taxes and assessments thereon and to keep the homestead in repair, out of any funds of his estate.    The residue and remainder of his property he gave to said executors and their successors in trust for said daughters and two sons, during their respective lives, directing that the same be divided into four equal shares, one share to be held for each of said children.    The executors declined to act and an administrator with the will annexed was duly appointed.    Upon the settlement of the estate distributors were appointed by the probate court to divide said residue according to law and subject to the terms of the will.    The division made was in itself equal and just, but no fund or estate was reserved for the payment of future taxes, assessments and repairs upon the homestead, nor was said distribution in terms made subject to the burden in favor of the homestead and by the testator imposed upon the residue so distributed.    The daughters appealed from the order and decree of the probate court accepting the distribution.    *Held :*—

1. That it was evidently the intention of the testator that his executors should pay the taxes and assessments upon the homestead and keep the same in repair during the aforesaid term, out of any funds belonging to his estate.

2. That the only way in which the executors could comply with such requirements would be by reserving in their hands sufficient funds of the estate for these purposes.

3. That such provision of the will was not void for uncertainty in the quantity of the estate to which the trust should attach; especially in the absence of any finding that the amount required to be reserved for these purposes could not, approximately and with reasonable certainty, be determined by the probate court upon a hearing.

4. That although neither the probate court, nor distributors whose duties are purely ministerial, could affix conditions or burdens to the division, yet they were legally bound to recognize those which the testator had imposed. If they fail to do this and the distributees or any of them are prejudiced by such omission, they are "aggrieved" within the meaning of the statute (General Statutes, § 640), and have the right to appeal from the decree accepting such distribution; and this right is not affected by the fact that in some other way a court of equity might enforce the charge.

5. That it was unnecessary that the appellants should have appealed from the order appointing distributors, since they were not in any respect injured thereby.

6. That division of the residue of the estate be made, subject to the right and duty of the administrator with the will annexed, to retain in his hands such items and amount of the property, reserved equally from each share, as the probate court should find necessary to produce an income sufficient to meet said charges. And that if the probate court should at any time hereafter find that the amount so reserved was unnecessarily large, it might then direct the payment of the excess, either principal or income, to the persons entitled thereto under the distribution; and at the close of the term might correct any inequalities which had arisen in the shares of the beneficiaries in such reserved fund during said term.

7. A bequest so indefinite in amount or subject-matter as to be incapable of determination and execution by a court, is undoubtedly void. But such indefiniteness must clearly appear; it cannot be presumed.

[Submitted on briefs, January 16th,—decided February 8th, 1894.]

APPEAL from an order and decree of the Probate Court for the District of Bridgeport, accepting the report of distributors on the estate of Nathaniel S. Wordin deceased; brought to the Superior Court in Fairfield County, and tried to the court, *John M. Hall, J.;* facts found and case reserved for the advice of this court.*

The case is sufficiently stated in the opinion.

*Samuel Fessenden* and *Homer S. Cummings*, for the appellants.

---

* This case was argued at the October Term, 1893, in Bridgeport, but was continued in order that a new party might be summoned in and that the record might be amplified.

I. It was the clear purpose of the testator, that the taxes, assessments and repairs, described in section six, should fall as a burden upon the estate (either before or after distribu- tion), and that no distribution and no construction should be permitted to defeat that purpose or conflict with it. The result of the distribution as made would be the utter destruc- tion of one of the leading provisions of the will. This is contrary to the spirit of the law, for, "If possible, some ef- fect shall be given to each distinct provision, rather than that it should be annihilated." *Chrystie* v. *Phyfe*, 19 N. Y., 348.

II. Such a distribution cannot be properly made, for a *legal* distribution must be consistent with the reservation of the power or means for paying or providing for the payment of the taxes, assessments and repairs, as required in section six of the will.

III. It is urged by the appellees, that such a reservation is impossible practically, owing to the inherent difficulties of the case. It is said that the correct sum or amount to be reserved "cannot be judicially determined." The finding discloses no such condition. There is certainly nothing in the language of the will itself, in connection with the facts found, which shows that it is impossible for the court to de- termine with perfect accuracy the sum to be reserved. Whether such sum may be judicially fixed by the court in this case, is a question of fact and not one of law. We sub- mit that there is no fixed rule of law preventing the definite determination of taxes, assessments or repairs, and that, as a matter of fact, the accurate or approximate determination of such questions is a matter of everyday business life by individuals, banking institutions, and insurance companies, and that by the application of well-established rules, such seeming uncertainties are rendered definite, fixed and certain. Jarman on Wills, Rule XIII; *Thorpe* v. *Owen*, 2 Hare, 610; *Broad* v. *Bevan*, 1 Russ., 511.

IV. The duties of the executor did not cease upon the death of the widow; nor until they are in fact discharged as the will directs. Distribution itself does not necessarily ex- haust the executor's or administrator's powers. *Davis* v.

*Weed*, 44 Conn., 577. Clearly, then, when the estate is improperly settled or distributed, or where one of the commands of the testator remains unexecuted, the power of the administrator survives if that power is necessary to the performance of the testator's wish. *Booth* v. *Starr*, 5 Day, 286 ; *Seymour* v. *Seymour*, 22 Conn., 272, 278 ; *Re Howard*, 9 Wall., 184.

V. It is also claimed by the appellees that it is impossible to charge the shares of the distributees—their burdens being indicated by the will and not by distributors, whose duty is to divide the residue into four equal parts, in favor of the trustees of said beneficiaries. Distributors cannot affix conditions, for burdens " attach, if at all, after such distribution is made." This is little more than a subtle " begging of the question." What is said is true enough, perhaps, but it does not meet the case. It assumes as settled the very point in controversy. We do not ask that the distributors shall impose burdens, but we insist that they should recognize burdens already imposed.

VI. Finally, it is claimed by the appellees that the provision in section six, relating to the payment of taxes, assessments and repairs, is void for uncertainty, because a proper reserve cannot be judicially determined, and because no means are provided in the will for apportioning the charges and expenditures between the trustees of the beneficiaries.

The extreme reluctance of the courts to destroy the efficacy of a will or any of its provisions, on the ground of uncertainty, has passed into a familiar principle. Wigram on Wills, p. 369 ; 1 Jarman on Wills, 472 ; Schouler on Wills, § 594 ; *Mason* v. *Robinson*, 2 Sim. & S., 295. " It must be an extreme case before we can relieve ourselves of the duty of giving a construction to the instrument by declaring it void for uncertainty." *Den* v. *McMurtrie*, 3 Green. (N. J.), 276 ; *Doe d. Winter* v. *Perratt*, 6 Mann. & Gr., 359 ; *Wooton* v. *Redd*, 11 Gratt., 196 ; Redfield on Wills (1884), p. 670 ; *Townshend* v. *Downer*, 23 Vt., 225 ; *Bull* v. *Bull*, 8 Conn., 51 ; *Treat's Appeal*, 30 Conn., 116.

*Stiles Judson, Jr.*, for the appellees.

I. The distribution was a ministerial duty over which the probate court could exercise no discretion in respect to the reservation of a fund for the payment of the claims that are urged by the appellants. *Strong* v. *Strong*, 8 Conn., 411. The distribution is admittedly fair and equitable in itself; but the appellants claim that it should have been made subject to the provisions in the sixth clause of the will. But the interests of the appellants under that clause are not in the slightest degree affected by the judgment of distributors on the subject of values. If this is so then they are not *interested* persons and cannot be *aggrieved* within the meaning of General Statutes, § 640, concerning probate appeals. *Nash* v. *Taylor*, 83 Ind., 343. But if interested, then under § 558 of the General Statutes, the order of the probate court is binding on them.

II. The claim of the appellants that a certain sum must be set aside sufficient in amount to yield an income competent to pay future taxes and assessments, cannot be sustained, owing to the uncertainty in the *quantity* of the estate to which the trust is to attach. Jarman on Wills, pp. 388, 389. How shall this amount be determined, and by whom? It is incapable of being ascertained from the nature of the case, and for that reason must be declared void. In some of the early English cases, the difficulties here presented were discussed, and the utter futility of attempting judicially to determine the amount required to pay uncertain future charges was fully recognized, even when worthy and charitable purposes were defeated in consequence. *Chapman* v. *Brown*, 6 Ves., 404; *Limbrey* v. *Gun*, 6 Mad., 151; *Fowler* v. *Fowler*, 33 Beav., 618; *In re Bickett*, 9 Ch. Div., 580; *Milford* v. *Reynolds*, 16 Sim., 105; *Atty. Gen.* v. *Hinxman*, 2 J. & W., 269; Redfield on Wills, Vol. 1, pp. 676, 683, 684; *Adams* v. *Spaulding*, 12 Conn., 259; Perry on Trusts, Vol. 1, § 308.

III. It is next contended by the appellants, that if such fund is not to be set aside and reserved to the administrator for the execution of the alleged trust, that at least, the residuary shares, in the division made under the will, should be, in terms, expressly charged with the payment of the contin-

gent obligations embraced in paragraph six. Such direction constitutes a valid charge upon the residuary shares. It is not essential to the creation of a charge that the burden should be attached in express terms to the estate devised. *Mathewson* v. *Saunders*, 11 Conn., 144. And even were such charge not intended to be an incumbrance upon the estate devised, it would create an obligation on the part of the trustees of these beneficiaries to pay such sums as were reasonably required for the purposes indicated in the will. *Olmstead* v. *Brush*, 29 Conn., 535. If such charge exists, it is solely the creation of the will, and not of the court or the distributors. The trustees may enforce from their residuary shares the payment of such as accrue in the future, with respect to the taxes, assessments and repairs; and all persons dealing with the property constituting the residue of the estate are bound to take notice of such charge. Perry on Trusts, Vol. 2, p. 529; *Scott* v. *Patchen*, 54 Vt., 253; *Mathewson* v. *Saunders*, 11 Conn., 144; *Gardner* v. *Gardner*, 3 Mason, 178; Perry on Trusts, Vol. 2, §§ 560, 805; Lewin on Trusts, Vol. 2, p. 611; Story's Eq. Juris., Vol. 2, § 1251.

If the administrator *in his capacity as such*, is to discharge these obligations, and not in the exercise of a *trust power*, then these appellants are to be treated merely as creditors of the estate who have contingent claims against it, and they would have no interest as such, in the distribution made. They must look to the administrator for satisfaction of their claims when they mature, and the administrator, in turn, may secure ample protection under the statute governing such case. General Statutes, § 633. It would therefore seem, in the case at bar, that the residuary legatees or devisees are legally entitled to the whole beneficial interest in this residue, and the distribution thereof was in strict accord with the intent of the testator. To the estate that is made the subject of the distribution, the law attaches such burdens as are to be deduced from a proper construction of the will, and with this the distributors are not concerned.

FENN, J. This is a reservation by the Superior Court of

questions arising upon an appeal to that court, from the order and decree of the court of probate for the district of Bridgeport, made on the 30th day of December, 1892, accepting a division of the testate estate of Nathaniel S. Wordin, by persons appointed by said court to make such division, pursuant to General Statutes, § 558.

It appears by the record that said Wordin died June 10th, 1889, leaving a last will which was duly admitted to probate, by which will, after giving sundry legacies, he disposed of his property as follows:—

"Paragraph Fifth. I will, order and direct, that all the rest of my estate and property remain in the care and keeping of my executors during the lifetime of my said wife, Fanny Augusta, and that my executors shall collect the rents, dividends and interest which may accrue thereon as it becomes due, and pay the legal taxes, insurance and necessary repairs on the buildings, and other legitimate expenses, and pay over the balance to my said wife semi-annually, or from time to time, as may be needful, to be used or invested as her own absolutely.

"Paragraph Sixth. At the decease of my wife, Fanny Augusta, aforesaid, I give, devise and bequeath to my executors in trust, so much of the homestead, No. 334 State street, as lies south of a line parallel with State street, and distant therefrom one hundred and fifty feet, for the free and unmolested use of my daughters, Helen C. and Fanny L., aforesaid, jointly, during their natural lives, or the lifetime of the survivor of them. My said executors to pay legal taxes and assessments thereon, and keep the same in repair, out of any funds belonging to my estate, during said term. At the decease of both daughters, aforesaid, the property shall become and be a part of the residue of my estate, and treated as such.

"Paragraph Seventh. At the decease of my wife, Fanny Augusta, aforesaid, subject to the foregoing, I will and direct, that the residue and remainder of my estate be divided into four equal shares, and I give, devise and bequeath to my executors and their successors in trust, one of said shares

for each of my children, to wit: Helen C., Nathaniel Eugene, Fanny L. and Thomas C., aforesaid, in the manner and for the purposes hereinafter provided and stipulated : First. One shall be held and managed for my son, Nathaniel Eugene Wordin, M. D., aforesaid, and the net income, rents and profits paid over to him semi-annually during his natural life. If, at his death, he shall leave a son or sons, his own issue, then I will that said share become and be vested in said son or sons, share and share alike, absolutely, and to his or their heirs. Second. Two shares shall be held and managed for Helen C. and Fanny L., aforesaid, and the net income paid over, one half to each respectively, semi-annually. Upon the death of either, the survivor shall take the net income of both shares, during her natural life. Third. The remaining one share shall be held and managed for my son, Thomas Cook Wordin, aforesaid, and the net income paid over to him semi-annually, during his natural life. If, at his death he shall leave a son or sons, his own issue, then I will that said share become and be vested in said son or sons, share and share alike, absolutely, to his or their heirs."

The executors named in the will declined to act, and thereupon an administrator with the will annexed was duly appointed and qualified. The widow died August 25th, 1892. In October following, the administrator filed his account with the court of probate, showing property real and personal, amounting in the aggregate to $288,538.99, on hand, after all the charges and claims against said estate had been satisfied, except such burden as may be imposed upon said estate by virtue of the provisions of paragraph sixth of the will, relative to the payment of taxes, assessments, and repairs, which might accrue in the future, concerning the property therein described. Thereupon, on October 20th, 1892, the court of probate passed an order as follows :—" That said real and personal estate be divided into four equal shares and distributed among the residuary devisees and legatees under said will, to wit, to the trustee of said shares respectively for said Helen C. Wordin, Nathaniel Eugene Wordin, Fannie L. Wordin and Thomas C.

Wordin, for the purposes specified in said will, said division of said residue and remainder of said estate to be made according to and subject to the terms of said will, and according to law, and this court appoints Joseph W. Johnson, Philo H. Prindle and Chas. E. Wilmot, disinterested persons, who being duly sworn, shall make said division among and distribution to said trustees for said beneficiaries as required by said will, and according to and subject to the terms and conditions of said will and according to law, and make return to this court."

The persons appointed made return of their doings, dividing the estate into four equal parts, one for each of the four children, all being set to William B. Hincks, the administrator with the will annexed, in trust for said children respectively. No provision was made for the payment of the taxes, assessments and repairs provided for in paragraph sixth of the will. Nor was the matter in any wise referred to in said division. The court accepted such division and ordered it to be recorded and lodged on file. Pending the appeal, the record discloses that said William B. Hincks represented to the court of probate that a question had arisen whether he, as the administrator with the will annexed of the estate of Nathaniel S. Wordin, deceased, was, as such administrator, the successor of the executors appointed in said will, in trust, and entitled to act as trustee under the provisions of paragraph seventh of the will; that he desired to remove all doubt, and therefore declined to act as trustee. The declination was accepted by the court, and said court appointed Joseph W. Johnson trustee for Nathaniel E. Wordin; David Pendleton trustee for Helen C. Wordin and Fannie L. Wordin; and Herbert M. Knapp trustee for Thomas C. Wordin; all of whom have duly become parties to this reservation.

The appeal was taken by said Fannie L. Wordin and Helen C. Wordin, who claimed to be aggrieved because there was not set aside in the division, a sufficient sum to provide for the payment of the legal taxes, assessments and repairs referred to in paragraph sixth of the will; because in no way

was there reserved or set aside any fund or estate for such payment, and because said division is not in terms expressed to be charged with, or subject to, the burden of such payment.

In considering the interesting question thus presented to us by the reservation, let us first look carefully into the provisions of the will which we have quoted, in order to discover therefrom, as clearly as possible, the intention of the testator. It was his manifest design, as expressed in paragraph fifth, that during the lifetime of his wife, the entire property in bulk should remain undivided and unapportioned in the hands of the executors, who, out of the income, were to pay all legitimate expenses, including taxes and repairs, and the balance to his wife to be used and invested as her own, absolutely. It was also his intent as expressed in paragraph sixth, that after the decease of his wife his daughters should have the use of the homestead, or a certain defined portion thereof, for their lives and the life of the survivor, and that during this term his said executors should, out of any funds belonging to his estate, pay the legal taxes and assessments thereon, and keep the premises in repair. Coming now to paragraph seventh, three things are to be noticed. *First*, while at the decease of his wife the residue and the remainder of the testator's estate was to be divided into four equal shares, one to be held in trust for each of his four children respectively, yet the direction for division was made expressly "subject to the foregoing," viz., the provisions of the sixth paragraph. *Second*, although the executors were named as trustees, "successors in trust" were also provided for, which had not been done in the preceding paragraphs. *Third*, the trust as to the share of each of the sons might terminate, and such shares vest absolutely in issue, during the continuance of the life estate provided for in paragraph sixth. It would seem to follow therefore that the only way in which the executors could comply with the requirements of the express terms of paragraph sixth, to pay legal taxes, assessments, and repairs (which, it may be noticed, they were themselves instructed to make,) "out of any funds belonging to my es-

tate, during said term," would be by reserving in their hands
sufficient funds .to provide therefor.   We also think that
when, immediately following the creation in paragraph sixth
of a life estate in the homestead, in the daughters, together
with the provision for the payment of taxes, assessments and
repairs thereon, the testator began paragraph seventh by
saying : " At the decease of my wife Fanny Augusta, afore-
said, subject to the foregoing, I will and direct that the
residue and remainder of my estate be divided," etc.—his
intention was that such division should be subject to the life
estate of the homestead ; and further, subject to such reser-
vation of the other property or funds of his estate, as would
enable the executors to carry out the positive requirements
of his will, imposed upon them, in reference thereto.

Such being, in our opinion, the intention of the testator,
the next inquiry is whether such a provision is valid, or
whether as the appellees claim, it should be void for uncer-
tainty.   In support of the claim that it is void, the appellees
say that the setting aside by the court of probate, or the res-
ervation by the administrator of a certain sum of money, as
a fund, to yield an income equal to future taxes, assessments
and repairs, would create, in that respect, an active trust,
with legal title of an integral part of the estate vested in a
trustee for its proper execution, as distinguished from a mere
*power in trust;* and that such trust cannot be maintained
when tested by the rules of equity applicable to the subject,
because certainty in the *quantity* of the estate to which the
trust is to attach, is essential to its validity.   In support of
this proposition they cite as authority, Jarman on Wills,
pp. 388, 389 ; *Chapman* v. *Brown,* 6 Vesey, 404 ; *Limbrey* v.
*Gurr,* 6 Madd., 151 ; *Fowler* v. *Fowler,* 6 Beavan, 618 ; *In
re Bickett,* 9 Ch. Div., 580 ; *Mitford* v. *Reynolds,* 16 Sim., 105 ;
*Atty. Gen.* v. *Hinxman,* 2 J. & W., 269 ; Redfield on Wills,
Vol. 1, pp. 676, 683, 684 ; all of which on examination ap-
pear to be in point to the extent only that they are authority
for the proposition that a bequest so indefinite as to amount,
or subject-matter, as to be incapable of determination and
execution by the court, is void.   This principle is so unques-

tionable as hardly to justify the citation of authority at all in
its support.    If it did, such authority might be found in our
own state, in *Coit* v. *Comstock*, 51 Conn., 352, 386, as ex-
plained in *Bristol* v. *Bristol*, 53 Conn., 242, 257–260.

The very authorities cited by the appellees all show that
if the object of the testator is so defined " as to furnish fair
and reasonable data, the court will determine the amount
which ought to have been expended on it; " and that a be-
quest of a residue or surplus of a specific fund remaining
after providing for an object illegal or unattainable, the ex-
act amount to be laid out on which is not specified, is not
void for uncertainty, if the court can determine what would
have been the probable amount to be expended.    In short
the authorities do not require more than approximate or rea-
sonable certainty, and none, in applying the rule, go to the
extent which we should be obliged to go were we to declare
the testator's purpose void for the want of such certainty.
On the other hand it may fairly be held on principle, that a
less degree of certainty as to the amount required to be re-
served or set aside, should serve to support the provision
before us, than would be requisite in the cases cited by the
appellees.    In those cases the question arose concerning the
validity of bequests of residue remaining after indefinite pro-
visions for objects illegal or unattainable ; the amount re-
quired for which, once ascertained with whatever degree of
probability, could never be made more certain, or any in-
equality finally obviated, since the purpose of the testator
would never be actually executed.    In this case it is other-
wise.    If an amount be set aside which proves too large for
the purposes to be provided for, very little, if any, harm can
come to the beneficiaries from the retention of such excess
in the hands of the administrator, since the whole beneficial
interest in both principal and income of the entire sum, sub-
ject to the charge, belongs at all times to them respectively ;
and so far as the children of the testator are themselves con-
cerned, the only difference is that this amount remains in the
hands of the administrator in trust, instead of passing into
the hands of the trustees to hold in trust.

It is true that it would be impossible for a court to determine the exact amount which in the uncertain future will be required for the purpose contemplated by the testator.    The valuation of the homestead from time to time for the purposes of taxation, the rate of such taxation, and of municipal assessments, and the cost of repairs, are doubtless incapable of precise determination in advance.    So also, the amount which may be derived as income from any sum or property set aside must be measurably uncertain.    But there are no facts before us to show, nor are we able to take judicial notice, that all these things may not be fairly and reasonably approximated.    Indeed we believe they may be, and with no more difficulty than is experienced in matters occurring in the almost daily practice of the courts of probate in this state, where partial distribution is had, and the sums retained in the hands of executors, or administrators, for ultimate disposition after the discharge of the trusts or duties imposed.    It was early declared by this court in *Brewster* v. *McCall's Devisees*, 15 Conn., 274, 292, that: " A devise is never to be construed absolutely void for uncertainty, but from necessity.  If it be possible to reduce it to a certainty, the devise is to be sustained."    This principle is one which has received frequent application since, and we do not hesitate to apply it now and to hold that no such necessity has been shown, or is to be presumed to exist.

Finally, the appellees say that persons having been duly appointed under § 558 of the General Statutes to make the division required by the seventh paragraph of the will of the testator, and such appointment being by an order from which no appeal has been taken, the division was a ministerial duty directed by the testator, and over which the court could exercise no jurisdiction in respect to the reservation of a fund for the payment of the claims urged by the appellants.    They say that the appellants' interests, under paragraph sixth of the will, are not affected by the act of division ; that therefore, within the meaning of General Statutes, § 640, they are not interested persons, and cannot be *aggrieved ;* and that if they can be said to have an interest in the division ordered

by the testator, by virtue of their rights under paragraph sixth, then the order of the court of probate, under the terms of the Statutes, § 558, is binding on them and that the appeal should be dismissed.

In reference to this contention we will say that there are two orders of the court of probate.  The order for division, which is unappealed from, and is binding ; the order accepting the division which has been appealed from and is before us.  The former order directed the division of the estate on hand to be made " according to and subject to the terms and conditions of said will."  The latter order accepted a division in which no consideration was given to such " terms and conditions."  It is true that the powers of both the court of probate and of the persons appointed by it to make division, are strictly statutory, and of the latter purely ministerial. They cannot affix conditions or attach burdens to the division.  But they ought to recognize those which the testator has attached.  Failure to do so is equivalent to an attempt to nullify such provisions.  We need not inquire whether such an attempt could be successful.  It may well be true, as the appellees say, that a court of equity could enforce the charge ; or the appellants might, in the capacity of creditors of the estate, require the administrator to discharge the obligation without reference to the division made; that he would be liable on his bond.  *Sanford* v. *Gilman*, 44 Conn., 461, 464.  But because in some less convenient and more litigious way, involving family quarrels and dissensions, the same end could ultimately be accomplished, no reason is afforded why the appellants should be deprived of the very security and means which it was the intention of the testator they should have, through an omission of the persons appointed to make division under his will to recognize such means, coupled with the approval of the court of probate of such omission.  It cannot be correctly said that because as *cestui que trusts* of two of the trust shares in the residue of the estate, the appellants do not claim to be aggrieved by the division, it being conceded that the division of such residue was fairly and equitably made, they cannot be aggrieved at

all. They are bound by the division, when accepted by the court, as a whole; and if, taken as a whole, they are in any way prejudiced by it, in respect either to right or remedy, under any provisions of the will, they are thereby aggrieved.

It would have been a simpler and more customary way had the court of probate made an order for only partial division, reserving a sufficient sum to meet the requirements of paragraph sixth of the will. *Clement* v. *Brainard*, 46 Conn., 174, 181, 182. But the same result can now be accomplished by a division, as directed, " subject to the terms and conditions of the will ; " that is to say, subject to such a reservation of estate distributed, in the hands of the administrator, as may be found and ascertained by the court of probate will be sufficient to yield an income ample to defray the outlay charged upon the estate for taxes, assessments and repairs. *Bristol* v. *Bristol, supra,* p. 260. This will be similar to the distribution of property subject to dower, or other life estate, before the termination of such particular estate, which may, nevertheless, if personal property, remain in the hands of the executor until the determination of such particular estate. *Sanford* v. *Gilman, supra;* General Statutes, § 632 ; *Webster* v. *Merriam*, 9 Conn., 225. " If the substantial requirements of the will are complied with, the manner of doing it is not very material." *Platt* v. *Platt*, 42 Conn., 346.

For the reasons stated, we think there is error in the order and decree of the court of probate appealed from. And the Superior Court is advised that such order should be reversed, and that division should be made of the estate of the testator, subject to the right and duty of the administrator with the will annexed to retain in his hands such items and amount of the property divided, reserved equally from each share, as in the opinion of the court of probate, upon due hearing had and finding made, may be sufficient to enable such administrator, from the net income thereof, to defray the charges for taxes, assessments and repairs specified in paragraph sixth of the will, during the term therein created. Said court is also further advised, that should the amount reserved be found too large, it will be in the power of the court

of probate, at any time, by proper proceedings and order to direct further payment of principal or income to the persons entitled to the same under the division ; and also, at the close of the term, by proper order, to correct any inequalities which may have arisen in the shares of the beneficiaries in the reserved fund during the term.   *Platt* v. *Platt, supra.*

In this opinion the other judges concurred.